# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1403

_____

Kenneth R. Henderson,      *
            *
       Appellee,      *
            *     Appeal from the United States
     v.                    *     District Court for the
            *     Western District of Arkansas.
Les Munn, in his individual      *
capacity,                 *
            *
       Appellant.      *

_____

Submitted: November 17, 2005
Filed: February 28, 2006

_____

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Following his arrest, Kenneth R. Henderson (Henderson) filed suit under 42 U.S.C. § 1983 against Magnolia, Arkansas, Police Officer Les Munn (Officer Munn), in Officer Munn's individual capacity, alleging Officer Munn used excessive force when arresting Henderson, in violation of the Fourth and Fourteenth Amendments. Resolving Officer Munn's motion for summary judgment, the district court[1] dismissed the Fourteenth Amendment claim, denied summary judgment on the Fourth

_____

[1] The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

Amendment claim, and denied summary judgment on the basis of qualified immunity. Officer Munn appeals. We dismiss in part for lack of jurisdiction, and we affirm the district court's denial of summary judgment on the basis of qualified immunity.

## I.  BACKGROUND

On November 12, 2002, Officer Munn was patrolling an area of Magnolia looking for Henderson, the subject of two active arrest warrants for failure to appear. At approximately 12:30 a.m., Officer Munn stopped a car driven by Jackie Alexander (Alexander) for going well below the posted speed limit. Soon thereafter, a second patrol car, occupied by Magnolia Police Officer Adam Creek (Officer Creek), arrived at the scene. Officer Munn first approached the stopped car on the driver's side, shone his flashlight into the car, noticed two open beer cans on the floor behind the driver's seat, and observed three passengers: two women in the front seat, and one male (Henderson) in the back. Officer Creek approached the car's passenger side, stopping at the back door and opening it. Officer Creek asked the male passenger his name, and the passenger falsely stated his name was Steven Henderson.

During the encounter between Officer Creek and the male passenger, Officer Munn asked the car's driver, Alexander, to exit the car for a field sobriety test. After Officer Munn questioned Alexander regarding how much alcohol she had consumed, Officer Munn asked her the name of the man in the back seat. Alexander eventually replied the man's name was Ken Henderson. Officer Munn told Officer Creek who Henderson was and that Officer Creek should arrest him.[2] Officer Creek informed

---

[2]As the district court noted, Henderson and Officer Munn each "give[] conflicting accounts of the circumstances surrounding Henderson's arrest," with Officer Munn contending Henderson refused to cooperate with the officers and resisted arrest and with Henderson denying he resisted arrest. We derive our recitation of the facts from the district court's factual summary made in a light most favorable to Henderson, the nonmoving party, "and we accept as true [Henderson's] account of the facts where there are material inconsistencies." See Guite v. Wright, 147 F.3d 747, 749 and n.3 (8th Cir. 1998) (quoting Rogers v. Carter, 133 F.3d 1114,

Henderson he was under arrest, to which Henderson replied "why?" Officer Creek replied, "[You] don't ask the questions, [I do]."

After coming around to the car's passenger side to the open rear door, and without saying anything to Henderson, Officer Munn grabbed Henderson's right wrist to pull him from the car. Henderson turned to get out of the car but did not stand up. Officer Munn then pulled Henderson out of the car, and Officer Creek controlled Henderson by putting his arms around Henderson's neck in a headlock position or choke hold. The two officers and Henderson fell to the ground, with Henderson landing face down on his stomach. Officer Creek then placed his knee in the center of Henderson's back, pulled Henderson's left wrist behind Henderson's back, and handcuffed Henderson's left hand. Officer Creek was unable to cuff Henderson's right hand because Henderson's right arm was pinned under his body.

While Officer Creek was on top of Henderson, Henderson felt a blow to his right ankle from what Henderson believed was a heavy flashlight or baton. Henderson cried out in pain, screaming, "Oh, my leg." Officer Creek then moved off Henderson's back, and Henderson brought his right arm from beneath his body, allowing Officer Creek to handcuff Henderson's right hand. While Henderson lay face down on the ground with both hands restrained behind his back, Officer Munn sprayed pepper spray in Henderson's face, causing Henderson to experience difficulty breathing.

Officer Munn and Officer Creek lifted Henderson to his feet while Henderson complained of the pain. One of the officers called for an ambulance, which arrived at the scene shortly thereafter. After the ambulance arrived, Alexander saw Officer Munn pick up a flashlight and a baton from the ground. Around 1:00 a.m., Henderson was transported to Magnolia Hospital. The radiology department staff informed

1117 (8th Cir. 1998)).

Henderson he had a dislocated right ankle and a vertical fracture through the lower end of the fibula near the ankle with separation of the fragments. Henderson later underwent two surgeries to repair his right ankle.

As a result of the events occurring on November 12, 2002, Henderson was charged in state court with obstructing governmental operations by giving a false name, resisting arrest, and public intoxication. He was convicted of obstructing governmental operations and resisting arrest.

On August 27, 2004, Henderson filed an amended complaint under 42 U.S.C. § 1983 against Officer Munn, in his individual capacity, alleging Officer Munn violated Henderson's Fourth and Fourteenth Amendment rights to be free from excessive force. Officer Munn moved for summary judgment, arguing: (1) Henderson is barred from arguing he did not resist arrest in his section 1983 action by the doctrine of collateral estoppel, because Henderson was convicted of resisting arrest in state court; (2) Officer Munn did not use excessive force during Henderson's arrest; and (3) Officer Munn is protected from suit by qualified immunity. Denying Officer Munn's summary judgment motion, the district court held that under Arkansas law, Henderson was not estopped from arguing he did not resist arrest. The district court further held a jury could find the degree of force used against Henderson was not "objectively reasonable," and Officer Munn was not entitled to qualified immunity.

## II.    DISCUSSION
### A.    Extent of Jurisdiction Over Interlocutory Appeal

Officer Munn now brings this interlocutory appeal, arguing the district court erred in denying his summary judgment motion because he did not violate Henderson's Fourth Amendment rights and is entitled to qualified immunity. Officer Munn argues Henderson's assertion Officer Munn hit him in the lower right leg with a heavy flashlight or baton "amounts to mere speculation, and cannot form the basis of a denial of summary judgment." Officer Munn also contends Henderson's state

-4-

court conviction for resisting arrest estops Henderson from asserting in this section 1983 action he was not resisting arrest.

Although a party generally cannot appeal a district court's order denying summary judgment, Pool v. Sebastian County, Ark., 418 F.3d 934, 937 (8th Cir. 2005) (citation omitted), this court has limited authority to review the denial of qualified immunity, Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005) (citing Johnson v. Jones, 515 U.S. 304, 311 (1995)). A denial of summary judgment based on qualified immunity is immediately appealable to the extent the appellant seeks review of the purely legal determinations made by the district court. See, e.g., Johnson, 515 U.S. at 312-13; Wilson v. Lawrence County, Mo., 260 F.3d 946, 951 (8th Cir. 2001). "The question of what was known to a person who might be shielded by qualified immunity is reviewable, to determine if the known facts would inform a reasonable actor that his actions violate an established legal standard." Miller v. Schoenen, 75 F.3d 1305, 1309 (8th Cir. 1996). On the other hand, "if the issues relate to whether the actor actually committed the act of which he is accused . . . or other similar matters that the plaintiff must prove, we have no jurisdiction to review them in an interlocutory appeal of a denial of a summary-judgment motion based on qualified immunity." Id.

With these principles in mind, it is clear we lack jurisdiction over the portion of Officer Munn's appeal addressing whether the district court erred in crediting Henderson's version of the facts surrounding the arrest or in its determination of the collateral estoppel issue. Those issues do "nothing to inform us about whether, given the facts known at the time, [a] reasonable officer[] would have known that the level of force [he] employed was excessive." Id. Accordingly, the only issue properly before us is whether Officer Munn is entitled to summary judgment based on qualified immunity. See Pool, 418 F.3d at 937. We therefore dismiss, without prejudice, the remaining issues raised by Officer Munn for lack of jurisdiction.

**B.    Officer Munn's Liability on Excessive Force Claim**

Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Pagels v. Morrison, 335 F.3d 736, 739-40 (8th Cir. 2003).  We review de novo the district court's denial of a motion for summary judgment based on qualified immunity.  Id. at 739 (citation omitted).  In doing so, we "accept[] as true the facts that the district court specifically found were adequately supported, along with those facts that the district court likely assumed."  Lockridge v. Bd. of Trs. of the Univ. of Ark., 315 F.3d 1005, 1008 (8th Cir. 2003) (en banc) (internal quotation and citations omitted).  Thus, we will affirm a denial of qualified immunity "if there exists a genuine issue of material fact concerning the [defendant's] knowledge or if the moving party is not entitled to judgment as a matter of law."  Lyles v. City of Barling, 181 F.3d 914, 917 (8th Cir. 1999).

To determine whether an official is entitled to qualified immunity, we ask two questions: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted.  See Saucier v. Katz, 533 U.S. 194, 201 (2001); County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998); Wilson v. Lawrence County, Mo., 260 F.3d 946, 951 (8th Cir. 2001) (citing Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001)).

Our initial inquiry is whether the facts alleged show Officer Munn's conduct violated Henderson's constitutional right to be free from excessive force during the course of his arrest.  We analyze excessive force claims occurring in the context of seizures under the Fourth Amendment, using its reasonableness standard.  See Graham v. Connor, 490 U.S. 386, 395 (1989); Craighead v. Lee, 399 F.3d 954, 961 (8th Cir.), cert. denied, 126 S. Ct. 472 (2005).  The Supreme Court's "Fourth Amendment

jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, 'the test is whether the amount of force used was objectively reasonable under the particular circumstances.'" Littrell v. Franklin, 388 F.3d 578, 583 (8th Cir. 2004) (quoting Greiner v. City of Champlin, 27 F.3d 1346, 1354 (8th Cir. 1994)). "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1081 (8th Cir. 1990) (citing Graham, 490 U.S. at 396).

We examine the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. As the Supreme Court has instructed, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." Id. at 396-97; see also Littrell, 388 F.3d at 583.

We conclude Henderson presented sufficient proof in support of his claim, if believed, to allow a reasonable jury to find the degree of force used against him was not "objectively reasonable." See Kuha v. City of Minnetonka, 365 F.3d 590, 597 (8th Cir. 2003). Under Fourth Amendment jurisprudence, Officer Munn had the right to use *some degree* of physical coercion against Henderson to effect an arrest. See Graham, 490 U.S. at 396. However, after examining the circumstances surrounding Henderson's arrest, particularly with regard to Officer Munn's use of pepper spray against Henderson, we are unconvinced Officer Munn's actions were objectively reasonable, as a matter of law. While Officer Creek was on top of Henderson with his knee in the center of Henderson's back and with Henderson's left arm cuffed,

-7-

Henderson felt a heavy blow to his right ankle. As Henderson cried out in pain, Officer Creek moved off him and cuffed Henderson's right arm. At that point, Henderson was lying face down on the ground with both arms restrained behind his back and in pain due to his leg injury. Officer Munn then sprayed Henderson's face with pepper spray. Judging the reasonableness of Officer Munn's use of force from the perspective of a reasonable officer on the scene, we cannot say Officer Munn's conduct was "objectively reasonable under the particular circumstances." See Littrell, 388 F.3d at 583 (quotation omitted).

Urging us to adopt a contrary position, Officer Munn argues that "[i]n light of the fact that Henderson was resisting arrest, there is nothing 'excessive' about using pepper spray to get [Henderson] under control." Such an interpretation ignores our duty at the summary judgment stage to view the evidence in the light most favorable to Henderson, the nonmoving party. Henderson denied resisting arrest. However, even assuming *arguendo* Henderson resisted arrest, at the time Officer Munn sprayed Henderson's face with pepper spray, Henderson was under control lying face down on the ground with both arms handcuffed behind his back. In this compromising position, Henderson posed little or no threat to the safety of the officers or others. By the time Henderson was handcuffed and pinned face down on the ground, a reasonable jury could decide Henderson was no longer resisting arrest, even if he had resisted arrest before being subdued. Additionally, Officer Munn's reference to the offenses for which Henderson was arrested–obstructing governmental operations by giving a false name, resisting arrest, public intoxication, and the two outstanding warrants for failure to appear–fails to tip the scales of reasonableness in Officer Munn's favor. The negligible severity of such offenses did not necessarily justify the amount of force used against an individual who, according to Henderson's allegations, already had been subdued and restrained with handcuffs. Under these circumstances, the use of pepper spray may have been a "[g]ratuitous and completely unnecessary act[] of violence" and thus violated Henderson's Fourth Amendment rights. See Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir. 2001).

Next, with regard to our second inquiry, the right to be free from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures. See Graham, 490 U.S. at 394; see also Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998). Thus, we must determine if genuine issues of material fact exist as to whether a reasonable official would understand his conduct violated that right in the situation he confronted. Officer Munn, as the party moving for summary judgment, "must demonstrate that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions." Cross v. City of Des Moines, 965 F.2d 629, 632 (8th Cir. 1992) (quoting Salmon v. Schwarz, 948 F.2d 1131, 1136 (10th Cir. 1991)). As the Supreme Court has instructed, the issue is whether Officer Munn "acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed." Id. (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)).

Applying these principles, we agree with the district court that genuine issues of material fact exist as to whether a reasonable officer in Officer Munn's position would have known his actions violated Henderson's right to be free from excessive force. See Kukla v. Hulm, 310 F.3d 1046, 1050 (8th Cir. 2002). We need look no further than both parties' sharply conflicting accounts of the circumstances surrounding Henderson's arrest to find a material factual dispute. Henderson alleges he was not resisting arrest when Officer Munn hit Henderson's leg with a heavy object and then sprayed Henderson's face with pepper spray. Officer Munn, however, argues he acted reasonably under the circumstances given Henderson's refusal to cooperate with the officers and Henderson's resistance to the officers' efforts to arrest him. As the district court noted, "[t]he record does not conclusively establish the reasonableness of Officer Munn's actions or beliefs." While the jury may credit Officer Munn's testimony and disbelieve Henderson's testimony at trial, "it is not our function to remove the credibility assessment from the jury." Id. Thus, the district

court properly denied Officer Munn's motion for summary judgment on the basis of qualified immunity.

## III.   CONCLUSION

We dismiss for lack of jurisdiction the portion of Officer Munn's appeal addressing whether the district court erred in crediting Henderson's version of the facts or in its determination of the collateral estoppel issue.  We affirm the district court's denial of summary judgment on the basis of qualified immunity.

_____