**Richard DETERS and Derrick Storzieri, Plaintiffs–Appellees,**

v.

**Collete LAFUENTE, Ronald Knapp, The City of Poughkeepsie, and The City of Poughkeepsie Police Department, Defendants–Appellants.**

No. 03–7129(L), 03–7189(CON).

United States Court of Appeals, Second Circuit.

Argued: Nov. 19, 2003.

Decided: May 18, 2004.

Lance H. Klein, White Plains, N.Y. (Eric L. Gordon, Edward J. Phillips, Keane & Beane, P.C., of counsel), for Defendants–Appellants.

Scott B. Tulman, New York, NY, for Plaintiffs–Appellees.

Before OAKES, POOLER, and WESLEY, Circuit Judges.

PER CURIAM.

Defendants Collete Lafuente, Mayor of Poughkeepsie, New York, and Ronald Knapp, Poughkeepsie's Chief of Police, appeal from an order entered by the United States District Court for the Southern District of New York, Charles L. Brieant, *Judge*, holding that they are not entitled to qualified immunity on plaintiffs' First Amendment retaliation claims and denying summary judgment on that basis. Lafuente and Knapp argue that plaintiffs cannot establish that Lafuente and Knapp violated any of their constitutional rights. We agree, and reverse the denial of qualified immunity to these individual defendants. We decline to exercise appellate jurisdiction over the claims of the municipal defendants City of Poughkeepsie (the "City") and the City's Police Department.

## I.

The denial of a summary judgment motion based on a claim of qualified immunity "is immediately appealable where the district court has rejected the defense as a matter of law." *Munafo v. Metropolitan Transp. Auth.*, 285 F.3d 201, 210 (2d Cir. 2002). The claim that plaintiffs have failed to establish "the violation of a constitutional right at all" presents "a purely legal question." *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Here, defendants have accepted the facts as alleged by plaintiffs for the purposes of this appeal, removing any question of disputed factual issues. *See Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996).

Our review of the record reveals the following facts, viewed in the light most favorable to plaintiffs. On February 2, 1990, plaintiffs Richard Deters and Derrick Storzieri, police officers with the Poughkeepsie Police Department, arrested a man who sustained serious injuries in the course of the arrest. On December 21, 1990, Deters and Storzieri were arrested and charged with misdemeanor assault in connection with the incident; departmental disciplinary charges were also brought against them by the City of Poughkeepsie on that day.

After a jury trial, plaintiffs were acquitted of the criminal charges in December 1992. In March 1994, plaintiffs filed a lawsuit in state court, alleging false arrest, malicious prosecution, and violation of their civil rights. A few days later, plaintiffs were informed that the City intended to proceed with the disciplinary charges against them. Over the next three years, settlement discussions took place between plaintiffs and the City which centered on plaintiffs dropping their state court action and agreeing to some disciplinary penalty in exchange for the City withdrawing the disciplinary charges.

Lafuente assumed the mayoral office in January 1996; Knapp became Acting Chief of Police in February 1996, then was formally made Chief in October 1996. Lafuente was involved in some settlement discussions with plaintiffs once she became Mayor, in which she conveyed the settlement offer described above. At all times relevant to this appeal, the only person empowered under the City Charter to prosecute or dismiss the disciplinary charges against the plaintiffs was the City Administrator.[1] In 1997, Lafuente asked Knapp to review the pending disciplinary charges and report to her about them. Knapp's report recommended that the disciplinary charges be dismissed.

In September 1998, upon a motion from plaintiffs, the state court directed the City to schedule a hearing on the disciplinary charges. The hearing was conducted from December 1998 through May 2000. On July 7, 2000, the hearing officer recommended the dismissal of the charges, and the City Administrator dismissed the charges on July 25, 2000.

On January 22, 2002, plaintiffs brought the current 42 U.S.C. § 1983 action in federal court, alleging that Lafuente and Knapp maintained plaintiffs' disciplinary proceedings when they knew the charges were baseless. Plaintiffs claimed that Lafuente's and Knapp's continuation of the proceedings and other actions taken by Knapp were in retaliation for plaintiffs' state court action, and thereby violated their rights under the First Amendment. Plaintiffs also alleged an Equal Protection selective enforcement claim and a conspir-

acy claim.[2] On July 31, 2002, plaintiffs discontinued their state court action. Defendants moved for summary judgment in the instant case in December 2002.

Plaintiffs, in opposition to summary judgment, alleged that they were subjected to a number of adverse employment actions after they filed their state court action in 1994. Deters alleged six retaliatory actions taken between 1995 and 2001; Storzieri alleged nine retaliatory actions taken between 1994 and 1998. These actions included not being promoted to sergeant, not being appointed to open detective positions, and not being selected for assignments—such as K–9 handler, Main Mall patrol, field training officer, DWI coordinator, and Neighborhood Recovery Unit—for which they were eligible or had applied. Additionally, Deters alleged that formal disciplinary proceedings were initiated against him for leaving his patrol vehicle unattended, while running and unlocked, outside the Police Department.

Additionally, plaintiffs alleged that other actions were taken against each of them that created a hostile work environment. These actions included, with respect to Deters, being castigated for not doing his job, accused of failing to respond to calls, accused of playing games on the police radio, issued a summons by Knapp for failing to remove ice from a home Deters owned, told by a police captain that he would never get selected for a specialized position, and ordered to remain standing at a street corner for hours. Deters also alleged that Knapp complained to Deters's supervisor that Deters was going to his

---

1. Prior to the enactment of a new City Charter on January 1, 1996, the City Administrator was known as the City Manager. The duties of the City Manager were identical to those of a City Administrator.

2. Plaintiffs conceded at oral argument before this court that their Equal Protection claim

was without merit. We therefore do not address that claim in our consideration of the availability of qualified immunity to Lafuente and Knapp. Moreover, because we conclude that Lafuente and Knapp are entitled to qualified immunity, it is unnecessary to address the conspiracy claim.

personal vehicle 25–30 times a day, and instructed Deters's supervisors that fellow officers should not ride with Deters because Knapp wanted Deters to ride on his own. With respect to Storzieri, the alleged actions included being ordered to hang up the telephone when he was on break, ordered to remove a SWAT team patch on his uniform, accused by Knapp of falsifying documents when Storzieri was president of the Police Benefit Association, and instructed by supervisory personnel to make copies of all moving violations, parking, and city ordinances.

On January 24, 2003, the district court denied defendants' motion for summary judgment. Addressing the defense of qualified immunity, the district court stated that Lafuente's defense was "negated by the length of time during which the disciplinary charges remained outstanding" and that "[b]ad faith may be inferred from [her] offer to drop the disciplinary charges ... if the Plaintiffs would agree to drop their lawsuit in State Court." The district court did not address Knapp's qualified immunity defense. Although the district court's order denying summary judgment encompassed other issues, we consider here only Lafuente's and Knapp's

qualified immunity with respect to plaintiffs' retaliation claims alleging the unjustified continuation of disciplinary proceedings, and Knapp's qualified immunity with respect to plaintiffs' retaliation claims alleging hostile environment and the failure to promote.[3]

## II.

■ Turning first to the retaliation claims alleging the unjustified continuation of disciplinary proceedings, we hold that both Lafuente and Knapp are entitled to qualified immunity. Having reviewed the record for facts sufficient to create a jury issue on these claims, see Salim, 93 F.3d at 89–90, we cannot identify any evidence from which a jury could find that Lafuente or Knapp engaged in retaliation. Plaintiffs allege that Lafuente and Knapp retaliated against them by maintaining, as a matter of policy, the disciplinary proceedings against plaintiffs to punish them for bringing their state lawsuit and to coerce them into discontinuing the suit. More specifically, they allege that Lafuente, carrying out City policy, refused to dismiss the disciplinary charges even though she knew them to be baseless.[4] There is no evidence, however, that either

---

**3.** The municipal defendants request that we assume pendent appellate jurisdiction to dismiss the claims against them, arguing that the merits are "inextricably intertwined" with Lafuente's and Knapp's defense of qualified immunity. See Munafo, 285 F.3d at 215. The Police Department contends that it is not a proper defendant because it is an agency of the City of Poughkeepsie. While this may well be true, it is clear that the issue is not inextricably intertwined with the district court's decision on qualified immunity. For its part, the City argues that its liability is conditioned exclusively on the actions of Lafuente and Knapp. In light of the fact that authority over plaintiffs' disciplinary hearings rested with the City Administrator, we question that contention. In any case, determination of the City's liability, if any, is best left to the district court.

Recognizing that "we have exercised [pendent appellate] jurisdiction only in exceptional circumstances," we decline to do so here because "consideration of municipal liability [i]s not necessary to ensure meaningful review of the individual defendants' claims of qualified immunity." Id.; see also Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 255 (2d Cir.2001) (declining to exercise pendent jurisdiction over defendant school district's claim that plaintiff failed to show a policy or practice allowing individual defendant's conduct).

**4.** Plaintiffs do not make any specific allegations as to Knapp on this claim, other than that he wrote a memorandum to Lafuente in 1997 reviewing the plaintiffs' charges.

Lafuente or Knapp had the authority to determine whether the disciplinary proceedings against plaintiffs should be dismissed or maintained. Indeed, that authority resides exclusively with the City Administrator pursuant to the City's Charter. Similarly, although she could have made a recommendation regarding the proceedings, there is no evidence that Lafuente had authority to influence the City Administrator's decision whether to continue plaintiffs' prosecution.[5] At all times, the power to maintain or drop the prosecution remained with the City Administrator.

We fail to see how Lafuente and Knapp, without any authority to stop the proceedings, violated plaintiffs' constitutional rights by not dismissing them. Although plaintiffs devote much of their argument to the question of retaliatory intent, intent is not an issue where, as here, defendants had no authority to act. Lafuente's and Knapp's lack of authority means that they could not have retaliated against the plaintiffs in the manner complained of, and plaintiffs have pointed to no other evidence of retaliation. Thus, even if we assume all the facts in plaintiffs' favor, the record is bare of evidence from which a jury could find that plaintiffs' First Amendment rights were violated by Lafuente and Knapp. In the absence of a violation of a constitutional right, Lafuente and Knapp are entitled to qualified immunity as a matter of law. *See McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir.1999) ("Where there is a 'total absence of evidence of retaliation,' there is no basis on which to conclude that the defendant seeking qualified immunity violated clearly established law.") (quoting

*Gubitosi v. Kapica*, 154 F.3d 30, 33 (2d Cir.1998) (per curiam)).

Plaintiffs claim that Knapp also retaliated against them by creating a hostile work environment, alleging a string of isolated actions occurring over a multi-year period. With respect to hostile work environments, we have stated that "[o]ur precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir.2002) (citing *Bernheim v. Litt*, 79 F.3d 318, 324–25 (2d Cir.1996)). But "[i]ncidents that are relatively minor and infrequent will not meet the standard" for a discriminatorily hostile environment. *Id.* In our view, the incidents alleged here were both minor and infrequent; there is nothing in this record that resembles the "pattern of nearly constant harassment" in *Phillips, id.* at 108, nor any one incident that is particularly severe. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (setting forth standard for establishing hostile working environment). Looking at plaintiffs' hostile environment allegations in the most favorable light, we hold that they are insufficient to raise a constitutional claim of retaliation. Knapp is therefore entitled to qualified immunity on this claim.

Finally, we address plaintiffs' failure-to-promote claim against Knapp. In order to establish this claim, plaintiffs must demonstrate that they suffered an adverse employment action which was causally connected to their pursuit of a state court action against defendants. *See Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir.2003) (setting forth re-

---

**5.** Plaintiffs contended for the first time at oral argument that Lafuente should have fired the City Administrator. This argument is unsupported by any cited authority and we reject it here.

quirements for First Amendment retaliation claim). As we stated in *Mandell*, "adverse employment actions include … refusals to promote." *Id.* at 383. To meet the causal connection requirement, plaintiffs must show that their maintenance of the state court action "was a substantial motivating factor" in Knapp's decision not to approve their promotion, selection, or assignment to various positions.[6] *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999). In so doing, they "may not rely on conclusory assertions of retaliatory motive, but must offer instead some tangible proof to demonstrate that their version of what occurred was not imaginary." *Id.* at 111; *see also Cobb v. Pozzi*, 352 F.3d 79, 97 (2d Cir.2003) (holding causation element not satisfied when evidence was insufficient to permit conclusion that union membership was a motivating factor in defendants' decision to discipline plaintiffs).

■ Here, plaintiffs have offered no facts supporting a retaliatory motive on the part of Knapp. Instead, they engage in wide-ranging speculation about what may have motivated him to act as he did with respect to plaintiffs. Plaintiffs do not offer any evidence to contradict Knapp's testimony that he did not exercise independent judgment when presented with the promotion choices of the selection committees, but, rather, relied on the committees' recommendations. Without some proof in the record that Knapp possessed retaliatory animus toward them, plaintiffs cannot succeed in making out a First Amendment retaliation claim on their failure to be promoted. Accordingly, Knapp is entitled to qualified immunity on this claim as well.

**6.** The promotions, selections and assignments at issue in this case were determined by committees of supervisory, detective, and patrol officers. As Chief of Police, Knapp was not

### III.

In sum, even when we assume all the facts in the record in plaintiffs' favor, we conclude that plaintiffs have failed to identify affirmative evidence showing that Lafuente and Knapp retaliated against them in violation of their First Amendment rights. Lafuente and Knapp have therefore established qualified immunity defenses as to all plaintiffs' claims. As a result, we reverse the district court's order denying summary judgment to Lafuente and Knapp on the basis of qualified immunity.

We decline to exercise pendent jurisdiction over the claims of the municipal defendants and remand for further proceedings consistent with this opinion.

directly involved with the committees, but approved or disapproved the choices made by them.